<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
|  | Civil Action No.11-4913 |
| THERESA WALKER-ROBINSON, | (SDW) |
| Plaintiff, |  |
| v. | **OPINION** |
| J.P. MORGAN CHASE BANK, N.A., et al |  |
| Defendants. | July 27, 2012 |

**WIGENTON**, District Judge.

Before this Court is defendant J.P. Morgan Chase Bank, N.A.'s ("Defendant" or "JPMCB") motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"), plaintiff Theresa Walker-Robinson's ("Plaintiff") amended complaint alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). 29 U.S.C. § 621, *et seq*.

This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5 and 29 U.S.C. § 621, *et seq*. This Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **DENIES** Defendant's Motion.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff is a forty-six year old African American woman who has worked in banking for approximately seventeen years. (Am. Compl. ¶ 1.) Initially, Plaintiff was employed by National Community Bank and The Bank of New York. (*Id.* at ¶ 2.) In 2006, National Community Bank and The Bank of New York merged with Defendant, at which point Plaintiff became Defendant's employee. (*See id.*) In 2008, Plaintiff served as a Branch Manager for Defendant's

Lyndhurst bank branch.  (*Id.* at ¶ 3.)   On or before October 2008, Christopher Zardavets ("Zardavets"), a Caucasian male in his thirties, became employed by Defendant as District Manager, including managerial jurisdiction over Plaintiff's Lyndhurst branch.  (*Id.* at ¶¶ 4, 5.) Plaintiff alleges that Zardavets announced that he would "*change the face of the region*" and then began routinely visiting branches where the manager was an African American female over the age of forty.  (*Id.* at ¶ 5.)   Plaintiff's Lyndhurst branch was among those routinely visited by Zardavets.  (*Id.*)   At this time, Plaintiff was over the age of forty.  (*See id.* at ¶ 1.)   According to Plaintiff, this alleged harassment started in December 2008, and continued until April 2009. (Affidavit of Philip Goldstein ("Goldstein Aff.") Ex. A, Question 8.)   Plaintiff alleges that even after she confronted Zardavets about his inappropriate conduct, he "continued coming to the [b]ank and making discriminatory and other harassing remarks to [P]laintiff and criticizing her job performance, although [P]laintiff's performance had always been superior."  (Am. Compl. ¶ 7.)   On February 5, 2009, Zardavets placed Plaintiff on "written warning" alleging that the bankers she managed were ineffective.[1]  (*See* Goldstein Aff. Ex. A, Question 2.)   At this time, Plaintiff consulted with an attorney, William Ewing, and was advised to document all of her meetings with her staff and to respond to Zardavets' written warning in writing.  (*See id.* at Questions 15-16.)

In April 2009, Plaintiff complained about Zardavet's behavior to his supervisor, Maryann Accaro, who told her not to worry about it.  (*See id.* at Question 13; *see also* Am. Compl. ¶ 8.) On April 28, 2009, Plaintiff was terminated from JPMCB for "lack of leadership."  (Goldstein

---

[1] In Plaintiff's Amended Complaint, she alleges that the written warning was issued in retaliation when she "protested the activity of Christopher Zardavets against her[.]"  (Am. Compl. ¶ 6.)

Aff. Ex. A, Question 21; *see also* Am. Compl. ¶ 8.)  Plaintiff claims loss of salary and benefits as a result of the harassment.  (Goldstein Aff. Ex. A, Question 21.)

On February 21, 2010, Plaintiff completed an intake questionnaire with the Equal Employment Opportunity Committee ("EEOC") entitled "Intake-Questionnaire – Harassment" ("First Intake Questionnaire") claiming "wrongful[] termination . . . because of [her] age [-] at the time of [her] termination [she] was 44 years old[.]"  (*Id.* at Question 22.)  On February 22, 2010, the EEOC issued Defendant a "NOTICE OF CHARGE OF DISCRIMINATION" ("Notice of Charge of Discrimination") stating that "[t]his is notice that a charge of employment discrimination has been filed against your organization under [t]he Age Discrimination in Employment Act (ADEA)."  (Goldstein Aff. Ex. B.)  On March 20, 2010, Plaintiff filed a second intake questionnaire with the EEOC entitled "Intake Questionnaire – Discharge" providing the same allegations contained in the First Intake Questionnaire, again listing age discrimination as the reason for her wrongful termination.  (*See* Goldstein Aff. Ex. C.)  In both questionnaires, Plaintiff indicated that she was seeking back-pay and bonuses, and for her personal record to reflect that she left Defendant of her own accord. (*See id*. at "Settlement Information"; Goldstein Aff. Ex. A, "Settlement Information".)  On April 1, 2010, a "Charge of Discrimination" was issued against Defendant for age-based discrimination.  (Goldstein Aff. Ex. E.)  On April 5, 2010, a notice of this charge was sent to Defendant requiring action.  (*See id*.)  On May 25, 2011, the EEOC issued Plaintiff a "Notice of Right to Sue" informing Plaintiff that the EEOC was closing her case and she would have to file a claim in federal or state court within 90 days of receipt of the notice.  (*See* Goldstein Aff. Ex. F.)  According to Plaintiff, she received the notice of right to sue from the EEOC after May 26, 2011.  (Am. Compl. ¶ 12.)

On August 25, 2011, Plaintiff filed a complaint ("Initial Complaint") in the United States District Court alleging termination of employment "as the result of Racial Discrimination, Gender and/or Sex Discrimination, Age Discrimination, and in retaliation for having complained about the conduct and behavior of Christopher Zardavets" in violation of her rights under 42 U.S.C. 2000e.   (Compl. ¶¶ 10, 11.)   On November 21, 2011, Plaintiff filed an amended complaint ("Amended Complaint") alleging ADEA violations and retaliatory conduct on the part of Zardavets.   (Am. Compl. ¶¶ 10, 11.)  Plaintiff alleges that because Zardavets did not also visit branches where the branch managers were young males, Zardavets' conduct "constituted harassment on the basis of race, age and gender."   (*Id.* at ¶ 5.)[2]   Plaintiff alleges that she was harassed weekly and that "[Zardavets] would come into [her] office/branch and demand to see reports, . . . request that [she] go to the conference room[,] a[nd] yell and b[e]rate [her] for at least 2 hours each incident."   (Goldstein Aff. Ex. A, Question 8.)   In addition, Plaintiff claims injuries including loss of employment and income, emotional and psychological distress, embarrassment, and interference with present and future economic advantage.   (Am. Compl. ¶ 13.)

On December 16, 2011, Defendant filed the instant Motion.   On January 20, 2012, Plaintiff submitted a brief in opposition to Defendant's Motion.   On February 25, 2012, Defendant filed a reply to Plaintiff's opposition, insisting that an intake form alone does not constitute a charge.   (*See* Def.'s Reply Br. 1.)

---

[2] The Court notes that Defendant asserts that "[t]he Amended Complaint is largely the same as the Initial Complaint except Plaintiff names only [JPMCB] as a defendant, withdrew all of her Title VII claims, added claims pursuant to the ADEA, and now seeks redress pursuant only to the ADEA."   (Def.'s Br. 5.).   In her opposition, Plaintiff generally states that "Plaintiff has alleged that the termination was retaliatory for her complaints of age and other types of discrimination."   (Pl.'s Br. 5.)

**LEGAL STANDARD**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (internal citation omitted)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.* at 679.  The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (3d Cir. 2009).  First, the court must separate the factual elements from the legal conclusions.  *Id.*  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11.  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id.*  (citing *Phillips*, 515 F.3d at 234-35.)

**DISCUSSION**

Defendant filed the instant Motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) claiming the following: 1) Plaintiff's ADEA claim is time barred; and 2) Plaintiff did not file a charge alleging hostile work environment and retaliation.  (*See* Def.'s Br. 1-2, 14.) Plaintiff maintains that her charge was timely filed and that claims for hostile work environment and retaliation are valid and supported.  (Pl.'s Br. 5-8.)

*a.  A Charge of Discrimination Must be Filed within 300 days*

The basic tenet of administrative law requires that a plaintiff exhaust all required administrative remedies before commencing an action for judicial relief.  *See Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (citing *McKart v. United States,* 395 U.S. 185, 193 (1969)).  This exhaustion requirement  "[1] promote[s] administrative efficiency, [2] respects executive autonomy by allowing an agency the opportunity to correct its own errors, [3] provide[s] courts with the benefit of an agency's expertise, and [4] serve[s] judicial economy by having the administrative agency compile the factual record."  *Id.* (internal citation and quotation marks omitted).  A charge of age discrimination under the ADEA must be filed with the EEOC within 300 days after notice of termination.  *See* 29 U.S.C. § 626(d)(1) (stating that "[n]o civil

action may be commenced by an individual under [the ADEA]" unless a charge has been filed with the EEOC); *see also Sussman v. Vornado, Inc.*, 90 F.R.D. 680, 683 n. 5 (D.N.J. 1981) (stating that in the context of ADEA claims, 300 days is the relevant time period within which to file a EEOC claim because New Jersey is a deferral state);[3] *Wood v. Kaplan Props., Inc.*, No. 099-1941, 2009 WL 3230267, at *3 (D.N.J. Sept. 29, 2009) (noting that "a plaintiff in New Jersey is barred from bringing an action under the ADEA . . . for failure to exhaust administrative remedies if they fail to file a charge with the EEOC within the 300-day time period").

In the present case, it is undisputed that Plaintiff was terminated from JPMCB on April 28, 2009.  (*See* Am. Compl. ¶ 8; Def.'s Br. 1.)  It is also undisputed that Plaintiff had to file a discrimination charge with the EEOC by February 22, 2010 to be within the 300 day limitation period.  (*See* Am. Compl.¶ 9; Def.'s Br. 10.)  Plaintiff completed an EEOC intake questionnaire on or about February 21, 2010; however, a formal EEOC Charge of Discrimination[4] was not filed until April 1, 2010.  (*See* Goldstein Aff. Ex. A, Ex. E.)  Therefore, the issue before this Court is whether Plaintiff's First Intake Questionnaire constitutes a charge with the EEOC.

### 1.  *Charge of Discrimination*

The ADEA does not define the term "charge" and "[w]hile EEOC regulations give some content to the term, they fall short of a comprehensive definition."  *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 395 (2008).  The Supreme Court articulated that "when an agency

---

[3] Generally, the relevant time period within which to file a claim with the EEOC for an ADEA violation is 180 days. 29 U.S.C. § 626(d)(1)(A) .

[4] A EEOC Form 5, titled "Charge of Discrimination" generally constitutes a charge.  *See Holowecki*, 552 U.S. at 405; *see also Holender v. Mut. Indus. N. Inc.*, 527 F.3d 352, 356 (3d Cir. 2008) (stating that the EEOC form entitled "CHARGE OF DISCRIMINATION" is a charge for ADEA purposes).

invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) (stating that when "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation")). The EEOC defines "charge" to mean "a statement filed with the [EEOC] by . . . an aggrieved person which alleges that the named prospective defendant has engaged in . . . actions in violation of the [ADEA.]" 29 C.F.R. § 1626.3; *see also* 29 C.F.R. § 1626.6. The statement must contain:

> (1) The full name, address and telephone number of the person making the charge;
> (2) The full name and address of the person against whom the charge is made;
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
> (4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization.
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C. F. R. § 1626.8(a). The Supreme Court in *Holowecki* noted that "[e]ven with the aid of the regulations the meaning of charge remains unclear," and articulated that in addition to the requirements set forth in the regulations, the statement or document "must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 552 U.S. at 396, 402.

8

Therefore, the two-prong test of *Holowecki* has been construed to include 1) the requirements set forth in 29 C. F. R. § 1626.8(a), and 2) the request for the EEOC to take remedial action.  *See Holender*, 527 F.3d at 354-56.

The *Holowecki* Court also stated that "the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force."  *Id.* at 397 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  The Supreme Court recognized that "[t]here might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed [i]ntake [q]uestionnaire as a charge."  *Holowecki*, 552 U.S. at 405.  In *Holowecki,* the government submitted an *amicus* brief in support of the plaintiff's contention that the intake questionnaire and accompanying affidavit was a charge within the EEOC's regulations.  *Id.* at 398 (citing Brief for United States as *Amicus Curiae* 15.)  After considering Congressional intent and giving deference to the EEOC, the Court held that the plaintiff's intake questionnaire containing the requirements set forth in the Code of Federal Regulation section 1626.8(a), coupled with a six-page affidavit and a statement requesting that the EEOC "force [the defendant] to end their age discrimination plan" was sufficient to be considered a charge.  *Holowecki*, 552 U.S. at 405; *see also id*. at 402.

Applying the *Holowecki* standard to the present case, this Court finds that Plaintiff timely filed a charge with the EEOC upon the completion and filing of the First Intake Questionnaire on February 22, 2010.[5]  Plaintiff's First Intake Questionnaire included the following: 1) Plaintiff's name, address, and phone number; 2) Defendant's name and address; 3) specific incidents of the

---

[5] Although Plaintiff completed the First Intake Questionnaire on February 21, 2010, it was not filed with the EEOC until February 22, 2010.  (*See* Goldstein Aff. Ex. A; Goldstein Aff. Ex. B.)

alleged age discrimination by Zardavets including dates; 4) the approximate number of employees of Defendant's as "501+"; and 5) a check mark on "No" for whether she has "filed an EEOC Charge in the past." (Goldstein Aff. Ex. A.) This information satisfies the Code of Federal Regulation section 1626.8, promulgated as the first prong of the *Holowecki* standard.

Defendant contends that Plaintiff fails to satisfy the second prong of *Holowecki* because the First Intake Questionnaire did not include "an affidavit or any other document that requested the EEOC take remedial action." (Def.'s Br. 10.) Plaintiff's failure to include an affidavit with her questionnaire is not fatal to her case.[6] Plaintiff's description of the alleged age discrimination detailed in the First Intake Questionnaire is similar to the affidavit that the Court relied on in *Holowecki*. *See also Wood*, 2009 WL 3230267 at *4 ("Plaintiff's detailed, three-plus page description of the alleged discriminatory acts is similar to the six page affidavit that the *Holowecki* court relied upon.") Furthermore, Plaintiff's statement that she "would like to be paid for loss of wages from the date of [her] termination . . . . [and a]lso to have [her] file change[d] and not reflect terminated" is reasonably construed as a request for the EEOC "to take remedial action . . . or otherwise settle a dispute between the employer and the employee." (Goldstein Aff. Ex. A); *Holowecki*, 552 U.S. at 402. Therefore, this Court finds that the second prong of *Holowecki* is satisfied.

Furthermore, this Court is persuaded by the immediate actions taken by the EEOC, indicating that the agency construed the First Intake Questionnaire as a charge. *See Barnhart v. Walton*, 535 U.S. 212, 225 (2002) (stating that the Court generally gives deference to "matters of detail related to [an agency's] administration" of a statute). For example, on February 22, 2010,

---

[6] *Holowecki* does not explicitly state that an affidavit needs to be attached to the intake questionnaire in order for the questionnaire to be construed as a charge, rather the Supreme Court articulated that the plaintiff needs to have a statement requesting the agency to act. *See Holowecki*, 552 U.S. at 405-6.

the agency sent a Notice of Charge of Discrimination to Defendant's Manhattan, New York office notifying Defendant of the ADEA charge filed against JPMCB.  (*See* Goldstein Aff. Ex. B.)  The notice also included an EEOC charge number and statement acknowledging that an "[u]nperfected charge [was] received [by the agency] on 2/22/2010 – FORMAL CHARGE WILL FOLLOW AT A LATER DATE[.]" (*Id.*)  The EEOC's immediate notice to Defendant on a form that included a charge number and acknowledgment of an "unperfected charge" indicates that the agency recognizes Plaintiff's First Intake Questionnaire as a charge.[7]  Having considered the requirements and giving deference to the charging agency, this Court also construes the First Intake Questionnaire received by the EEOC on February 22, 2010 as a charge.  Thus, Plaintiff's charge of discrimination was within the EEOC's 300 day limitation.

**b.  *A Complaint Must be Filed within 90 Days of the Notice of Right to Sue***

Pursuant to 29 U.S.C. § 626(e) of the ADEA, "[a] civil action may be brought . . . . within 90 days after the date of the receipt of . . . [the] notice [of dismissal]."  The 90 day limitation "is akin to a statute of limitations rather than a jurisdictional bar."  *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999).  The Supreme Court has noted

---

[7] Plaintiff would have perceived the agency as recognizing her First Intake Questionnaire as a charge.  (*See* Pl.'s Br. 6-7.)  Even if Plaintiff's First Intake Questionnaire alone was not conclusive, the fact that the agency immediately notified Defendant of the existence of the charge and followed up on the claims is indicative that the agency construed the First Intake Questionnaire as a charge.  *See* 29 U.S.C. § 626(2) (indicating that "[u]pon receiving . . . a charge, the [EEOC] shall promptly notify all persons named in such charge as prospective defendants in the action and shall seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion"); *see also Holowecki*, 552 U.S. at 402 ("[I]f a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action . . . or otherwise settle a disputed between the employer and employee").  As discussed, deference is given to the agency.  *See Holowecki*, 552 U.S. at 405.  Not every intake questionnaire is a charge, but if it meets the requirements and the EEOC takes action, then the logical interpretation is that the agency has construed the filing as a charge.  *See Philbin v. Gen. Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 324 (7th Cir. 1991) (determining that an intake questionnaire constituted a charge when it was signed by the plaintiff, accepted by the EEOC, assigned a charge number, treated as a charge by plaintiff and the EEOC, and the EEOC notified the employer that a charge had been filed against it).

11

that when a court permits a plaintiff leave to amend her complaint, a statute of limitations "may be trumped by relating back when the subject of the amendment arises out of the same conduct, transaction, or occurrence described in the original pleading[.]"  *Mayle v. Felix*, 545 U.S. 644, 666 (2005).  Therefore, the statute of limitations relates back to the date of the initial complaint.

On May 25, 2011, the EEOC issued a "NOTICE OF RIGHT TO SUE" letter to Plaintiff stating that "[t]he EEOC is closing [Plaintiff's] case.  Therefore, [Plaintiff's] lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of [her] receipt of this Notice. Otherwise, [Plaintiff's] right to sue based on the above-numbered charge will be lost." (Goldstein Aff. Ex. F.)  Plaintiff asserts that May 27, 2011 was the earliest date of the receipt of the letter.  (*See* Pl.'s Br. 4.)[8]

Defendant asserts that Plaintiff's ADEA claim is time-barred because it was filed 180 days after the EEOC issued the Notice of Right to Sue.  (Def.'s Br. 13).  This Court disagrees. The key differences between Plaintiff's Initial Complaint and the Amended Complaint are paragraphs ten and eleven, where the Plaintiff replaces Title VII claims with claims pursuant to the ADEA, and removed references to race, gender and/or sex discrimination.  (*See* Compl. ¶¶ 10, 11; Am. Compl. ¶¶ 10, 11.)  The facts and circumstances surrounding her claim remain the same in both complaints against Defendant.  (*See generally* Compl.; Am. Compl.)  In addition, Defendant is not prejudiced by the addition of the ADEA claim to the Amended Complaint because Defendant had adequate notice of the ADEA claim and claims of age discrimination. *See Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (stating that in deciding whether leave to amend should be granted, the touchstone is

---

[8] The Amended Complaint provides that the letter "was not received by plaintiff until after May 26, 2011."  (Am. Compl. ¶ 12.)

whether the non-moving party would be prejudiced if the amendment is allowed).  Defendant

had notice of the ADEA claim as early as February 22, 2010, when the EEOC issued the

"NOTICE OF CHARGE OF DISCRIMINATION" and the only box checked was "Age

Discrimination in Employment (ADEA)."   (*See* Goldstein Aff. Ex. B.)   The "conduct,

transaction, and occurrence" surrounding Plaintiff's Amended Complaint are the same as the

Initial Complaint.  Thus, Plaintiff's Amended Complaint relates back to the date of the Initial

Complaint, and consequently, Plaintiff is within the 90 day limitation period.

### c.  *Hostile Work Environment and Retaliation Claims*

"The parameters of the civil action in the district court are defined by the scope of the

EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination[.]"  *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976); *see*

*also E.E.O.C. v. Rhone-Poulenc, Inc.*, 677 F. Supp. 264, 265 (D.N.J. 1988) aff'd, 876 F.2d 16 (3d

Cir. 1989).  While "this standard does not necessarily preclude a plaintiff from asserting a claim

for the mere failure to check a box on an EEOC [c]harge [f]orm, it does prevent a plaintiff from

'greatly expand[ing] an investigation simply by alleging new and different facts[.]'"  *Barzanty v.*

*Verizon PA, Inc.*, 361 Fed. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assoc., Inc.*,

572 F.2d 960, 967 (3d Cir. 1978)).  This standard serves to put an employer "on notice of the

claims likely to be filed against it."  *Barzanty*, 361 Fed. App'x at 414.  The Third Circuit "held

that a district court may assume jurisdiction over additional charges if they are reasonably within

the scope of the complainant's original charges and if a reasonable investigation by the EEOC

would have encompassed the new claims."  *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d

1208, 1212 (3d Cir. 1984) (citing *Hicks*, 572 F.2d at 967).

Defendant asserts that "Plaintiff's EEOC charge does not allege a hostile work environment or retaliation on the basis of her age in violation of the ADEA." (Def.'s Br. 14.)  In support of this assertion, Defendant notes that "Plaintiff checked only the box marked 'Age' and all of the allegations in her Charge refer solely to age discrimination in violation of the ADEA." (*Id*.)   In contrast, Plaintiff asserts that "[h]arassment would allegedly constitute a hostile environment" and that "Defendant is not in any position to state as to whether and what extent EEOC investigators would have investigated allegations of hostile environment and harassment during the course of the EEOC investigation." (Pl.'s Br. 5.)

This Court agrees that Plaintiff's hostile work environment and retaliation claims are within the scope of a reasonable EEOC investigation.  Plaintiff's retaliation and hostile work environment claims are alternate allegations regarding Plaintiff's termination based on age discrimination.  *See Howze*, 750 F.2d at 1212.  Likewise, both claims are supported by the same facts supporting Plaintiff's ADEA claim.  Plaintiff's Initial Complaint included the allegation that she was terminated "as the result of Racial Discrimination, Gender and/or Sex Discrimination, Age Discrimination, and in retaliation for having complained about the conduct and behavior of Christopher Zardavets."[9]  (Compl. ¶ 10.)  Evidence of hostile work environment and retaliatory behavior are reasonably within the scope of the EEOC's investigations of Plaintiff's age discrimination claims.[10]   As such, Defendant's request to dismiss Plaintiff's hostile work environment and retaliation claims is denied.

---

[9] In the First Intake Questionnaire, Plaintiff provided that Zardavets "would come into [her] office/branch and demand to see reports, look at [her] behavior with [her] staff, and then request that [she] go to the conference room and yell a[nd] b[e]rate [her] for at least 2 hours each incident." (Goldstein Aff. Ex. A, Question 8.)  Plaintiff also claims that she told Zardavets that she "was being harassed." (*Id.* at Question 2.)

[10] "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

14

**CONCLUSION**

For the aforementioned reasons, this Court hereby **DENIES** Defendant's Motion.


<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:  Clerk
cc:     Judge Arleo
        Parties

---

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).